***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Taylor, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding, with some modification, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing on 20 June 2002 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, the Industrial Commission has jurisdiction over them and the subject matter of this claim.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury, and an employment relationship existed between Billy S. Byrd and Supreme Tree Service.
4. The carrier on the risk is National Surety Corporation.
5. The employee alleges that he sustained an injury by accident or specific traumatic incident to his back or spine on or about May 7, 2001.
6. The employee earned an average weekly wage of $350.00 yielding a compensation rate of $233.35.
7. The employee was paid the entire day of the alleged injury.
8. The employee last worked for Supreme Tree Service on or about November 2, 2001.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was a 29-year-old male who worked for defendant-employer for approximately 17 months. He was employed as a "climber", and was responsible for climbing, topping, felling and removing trees. He often worked in this position while suspended from a crane and while wearing a harness, all while operating a chain saw weighing in excess of 25 pounds.
2. On May 7, 2001, in performing his duties, plaintiff was cleaning up a site at which he was working. One of the owners of Supreme Tree Service, Mr. W. A. Lee, was operating a bobcat on the opposite side of a truck. Mr. Lee directly supervised plaintiff.
3. While operating the bobcat, Mr. Lee placed a tree on the truck and it rolled off of the opposite side striking Mr. Byrd in the head.
4. Mr. Byrd immediately developed head, neck and back pain. When Mr. Byrd indicated what had happened he was ordered away from the truck by Mr. Lee.
5. Upon returning to the "shop", Mr. Byrd approached Mr. Lee concerning medical care. Mr. Lee became angry, and out of fear of losing his job, Mr. Byrd did not say anything further on the injury date.
6. W. A. Lee's Testimony that plaintiff never reported his injury and that he did not know anything about the accident or the circumstances surrounding it is not found to be credible.
7. Charles Jones who worked with defendant-employer for approximately two years was working on May 7, 2001. Mr. Jones indicated that plaintiff related the incident of that date a couple of days later to him and was complaining of pain. He also indicated that following May 7, 2001, plaintiff was unable to perform his regular job as he should and as he had done previously. Mr. Jones indicated that trees often fell off the truck and that he himself had been hit on the head by one. He also indicated that he was reasonably sure Mr. Lee would have been aware of plaintiff's injury because plaintiff complained constantly of pain. Mr. Jones also indicated that Mr. Lee would frequently "get in employee's faces" and that Mr. Lee had done the same to him. Mr. Jones had also seen Mr. Lee pick up a stick and go after Mr. Byrd.
8. Joe Peoples was also employed with defendant-employer for approximately two years and was so employed on May 7, 2001, the time of plaintiff's injury. Mr. Peoples did not see plaintiff's injury. At one point, Mr. Peoples was hurt when a saw hit his kneecap. Mr. Peoples did not file a workers' compensation claim at Mr. Lee's urging. Mr. Lee and Saundra Lee agreed that they would pay Mr. Peoples' bills as if he was working as long as he did not file a workers' compensation claim.
9. On the day after his injury, May 8, 2001, plaintiff presented for medical care with Timothy Holcomb, D.C. Following his evaluation, plaintiff was present when Dr. Holcomb's assistant contacted his employer in order to obtain workers' compensation insurance information. Defendant-employer denied coverage, and did not thereafter file this claim with its carrier.
10. Saundra Lee (W.A. Lee's wife who was responsible for all paperwork for Supreme Tree Service) maintains that she had no knowledge of plaintiff's injury until October 2001. In fact, by her own admission, she had knowledge that plaintiff's claimed injury, at the latest, on May 8, 2001 when Dr. Holcomb's office contacted her regarding workers' compensation coverage for plaintiff. The undersigned finds the testimony of Saundra Lee is not credible.
11. Even if plaintiff failed to formally report his injury as defendants contend, that failure is excused as defendants had actual knowledge of the injury. There has been no prejudice caused to defendants by their alleged lack of knowledge of plaintiff's injury. Any prejudice, which defendants have failed to demonstrate, was occasioned by defendant-employer's failure to report the injury to its carrier. Defendant-employer did not file this claim with its carrier despite having actual knowledge of the injury and the manner in which it occurred on either May 7 or May 8, 2001.
12. Supreme Tree Service modified plaintiff's duties in several ways after his injury, including assigning him to perform primarily "ground work" (work that did not require climbing trees or being suspended from a crane). Supreme Tree Service also hired another employee to perform the duties previously performed by plaintiff.
13. Plaintiff has been treated conservatively by his physicians, Dr. Robinson, a family practitioner, Dr. Patterson, a physical medicine and rehabilitation specialist and by Dr. Holcomb, a chiropractor. All physicians uniformly restricted plaintiff's activities such that he would be precluded from heavy lifting, that he should avoid activities involving pushing and pulling, and that he should/could not safely operate a chain saw while suspended from a crane or while situated above the ground in trees.
14. Plaintiff intermittently performed his regular duties including those involving cutting activities while suspended from a crane, but was unable to continue performing them due to pain and other symptoms of his injuries.
15. Plaintiff ceased working for defendant-employer on November 2, 2001 and remained totally disabled from employment until such time as he procured a job having a lower physical demand level on or about April 1, 2002.
16. Plaintiff was totally disabled from employment from November 3, 2001 to April 1, 2002.
17. On or about April 1, 2002, plaintiff obtained lighter physical demand employment with Munn's Cleaning Service with the assistance of his fiancee's family. He has been, at all times from April 1, 2002 to the present, employed working 20 hours per week at this employer and his duties involve cleaning services in offices.
18. Plaintiff has earned $125.00 per week from April 1, 2002 to the present.
19. Plaintiff has been partially disabled, considering his efforts to find other employment suitable to his physical capacity, and considering his age, training, education, work history and other factors, from April 1, 2001 to the present. Plaintiff continues to be partially disabled from employment.
20. Defendants appealed the Deputy Commissioner's Opinion and Award awarding compensation to plaintiff.
21. Defendant defended the hearing before the Deputy Commissioner without reasonable grounds. An award of costs to the plaintiff at the expense of defendants is therefore appropriate and the amount of $1,000.00 is found to be reasonable.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his cervical and lumbar spine on May 7, 2001.
2. Plaintiff was unable to earn the same wages in the same or any other employment as a direct and proximate result of his compensable injury and was totally disabled from all employment from November 3, 2001 through March 31, 2002.
3. Plaintiff is entitled to temporary total disability compensation in the amount of $233.35 per week from November 3, 2001 through March 31, 2002.
4. Plaintiff has been unable to earn the same wage in the same or any other employment as a direct and proximate result of his compensable injury and indeed has earned a diminished wage from April 1, 2002 and continuing.
5. Plaintiff is entitled to temporary partial disability compensation at the rate of 2/3 of the difference between his pre-injury average weekly wage ($350.00) and his weekly earnings in employment from April 1, 2002 ($125.00) and continuing. This compensation shall continue until further Order of the Commission and until such time as plaintiff is able to elect between any compensation due under N.C. Gen. Stat. §§ 97-31 and 97-30.
6. Plaintiff has not yet reached maximum medical improvement.
7. Plaintiff is entitled to all medical treatment reasonably intended to effect a cure, reduce his symptoms or lessen his disability as long as the same is related to his compensable injury.
8. Dr. Dwayne Patterson is hereby approved as plaintiff's treating physician.
9. Defendants appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirmed said opinion with compensation being paid to plaintiff. N.C. Gen. Stat. § 97-88.
10. In the discretion of the Full Commission, counsel for plaintiff is entitled to have defendants pay an attorney's fee in the amount of $500.00 pursuant to N.C. Gen. Stat. § 97-88, which is in addition to the amount awarded as a percentage of plaintiff's compensation.
11. Plaintiff is entitled to be paid $1,000.00 from defendants as costs of the hearing before the Deputy Commissioner pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For his temporary total disability, defendants shall pay plaintiff compensation at the rate of $233.35 per week from November 3, 2001 through and including March 31, 2002. This amount has accrued and shall be paid in a lump sum. This amount shall be paid subject to an attorney's fee contained in Paragraph 3.
2. For his temporary partial disability, defendants shall pay plaintiff compensation at the rate of $150.01 per week from April 1, 2002 and continuing. Portions of this amount have accrued and shall be paid in a lump sum. This amount shall be paid subject to an attorney's fee contained in Paragraph 3.
3. An attorney's fee of 25% is approved as a reasonable attorney's for plaintiff's attorney and shall be deducted directly from the amounts owed to plaintiff and paid directly by defendants to plaintiff's attorney. Plaintiff's counsel shall receive 25% of the lump sums and every fourth future compensation check until further Order of the Commission.
4. Defendants shall provide all medical treatment related to plaintiff's compensable injury.
5. Defendant shall pay $1,000.00 to plaintiff for costs of the original hearing.
6. Defendants shall pay to counsel for plaintiff an attorney's fee in the amount of $500.00 for defending this matter on appeal to the Full Commission.
7. Defendants shall pay the costs of this appeal, including an expert witness fee to Dr. Robinson in the amount of $250.00.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER